UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY O. PARKER,

            Plaintiff,                            Case Number 19-12915

v.                                             Honorable David M. Lawson

NATIONAL ASSOCIATION OF LETTER
CARRIERS, AFL-CIO, UNITED STATES
POSTAL SERVICE, and MEGAN J. BRENNAN,

            Defendants.
_____/

## OPINION AND ORDER GRANTING MOTIONS TO DISMISS AND DISMISSING THE AMENDED COMPLAINT

In an amended complaint, Stacey Parker alleges that she is the victim of workplace bullying. She has a management position in labor relations with the United States Postal Service (USPS) and therefore she is not eligible to join a union. Parker says that at a meeting attended by representatives of the National Association of Letter Carriers (NALC), the union's business agent, Pat Carroll, instigated racist insults and invective that local union presidents and Carroll directed at Parker, creating a hostile environment that the USPS allowed to occur. She contends that the NALC disparaged her competence and tried to convince the USPS to remove her. As a result, she says, the USPS narrowed her job responsibilities and denied her opportunities for promotions.

One might expect that these allegations would lead to claims against the USPS for suffering a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, and against the union for tortious interference with Parker's employment opportunities. Instead, Parker attempts to advance claims against both of these defendants for deprivation of due process under the Fifth Amendment with legal theories that she acknowledges are novel. Both defendants (defendant Megan Brennan, the Postmaster General, is sued only in her official capacity) filed

motions to dismiss for failure to state a claim. The USPS also contends that sovereign immunity undermines subject matter jurisdiction. The federal constitutional claim against the NALC fails because the union is not a government actor, and the Fifth Amendment only serves as a check on government, not private, action. The claim against the USPS (and General Brennan) fails because Parker has not stated a constitutional claim against her employer, and Parker's remedy can be found in Title VII. The Court will grant the motions and dismiss the amended complaint.

I.

The facts are taken from the amended complaint. Parker is a manager of labor relations at the USPS. As a management employee, she is not a member of the NALC, is not represented by that union (or any other), and is not covered by any collective bargaining agreement with the USPS.

Although her briefing suggests an ongoing problem, her complaint refers to a meeting in January 2018 between NALC officials and USPS management, including Parker, as the source of her claims. At that meeting, Patrick Carroll, NALC's business agent, "solicited derogatory and racist comments from NALC local presidents that were either directed at or concerned" Parker, who is an African American. The NALC officials allegedly referred to the meeting as "a lynching" and called Parker and other African-American managers "illiterate monkeys" and "useless." The NALC officials also expressed "hope that an African-American manager die because he was undeserving of respect." This behavior, according to the plaintiff, "formed the basis of a racially hostile environment."

Parker protested the racist and harassing misconduct. USPS management responded that she needed to "suck it up" and that "there was nothing [they could] do." She alleges that the NALC interfered with her employment and discredited her as an incompetent and unqualified manager, going so far as attempting to convince the USPS to fire her or limit her duties. She also contends

that the NALC circumvented her as the labor relations manager by going directly to the human resources manager. As a result of Parker's complaints of mistreatment, she avers, the USPS narrowed her work functions: her access to computer sites was revoked, she was excluded from essential meetings, and she was denied "promotional opportunities for management positions."

Parker formally complained about this treatment before filing the present lawsuit. In December 2018, she filed a request for counseling, alleging discrimination on the basis of race and sex, retaliation, harassment, and that she was subjected to a hostile work environment, invoking the administrative Equal Employment Opportunity (EEO) process. After the counseling process failed to yield satisfactory results, Parker was informed by letter on March 8, 2019, of her right to file a formal EEO complaint within 15 days. She filed an EEO complaint on March 26, 2019 — 18 days later — which the USPS dismissed as untimely under 29 C.F.R. § 1614.106(b). On July 24, 2019, Parker filed suit in this Court based on that untimely EEO complaint, but she voluntarily dismissed it one month later.

On October 4, 2019, Parker brought the present action, again suing the NALC, Patrick Carroll, the USPS, and Megan J. Brennan for damages for lost wages, mental pain and anguish, and consequential damages, including attorney's fees. Count I of the complaint is directed at the NALC and Carroll and labeled as a "due process violation." Count II, similarly labeled, is directed at the USPS and General Brennan. Parker amended the complaint to add a claim against the NALC and Carroll for interference with an ongoing business relationship (Count III), but the parties subsequently agreed to dismiss that count as well as the claim in Count I against Carroll.

As it stands today, the amended complaint pleads two claims based on the Fifth Amendment's Due Process Clause. Parker alleges in Count I that the NALC, through its "constitutionally prohibited conduct," interfered with her liberty interest by fostering a racially

-3-

hostile work environment at the January 2018 business meeting, and it interfered with her property interest by trying to poison her employment relationship with the USPS. In Count II, Parker alleges that the USPS and Brennan failed to "firmly oppose" the union's behavior at the meeting and allowed the NALC to influence the USPS's employment decision regarding Parker by narrowing the scope of her responsibilities and not promoting her.

The defendants separately have moved to dismiss the count of the complaint pleaded against it. The motions are fully briefed and oral argument will not aid in their disposition. It is therefore **ORDERED** that the motions shall be decided on the briefs. *See* E.D. Mich. LR 7.1(f)(2).

II.

The federal defendants argue that the suit against them is barred by sovereign immunity and, for various reasons, the plaintiff has not stated a viable claim for relief.

A.

As an initial matter, because Megan Brennan, the Postmaster General, is sued in her official capacity, the lawsuit against her is tantamount to a claim against the agency itself or the United States. *State of Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (*per curiam*) (holding that "relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter"). The same immunity rules protecting the government agency apply to her. *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013).

However, those immunity rules do not help these defendants. Certainly, sovereign immunity will bar suits against the United States and its agencies unless the government has waived immunity and has consented to be sued. *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). A waiver must be "unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). The Sixth Circuit has found that the

government has done just that in the Postal Reorganization Act, which created the present United States Postal Service as an "'an independent establishment of the executive branch of the Government of the United States.'" *Fed. Exp. Corp. v. United States Postal Serv.*, 151 F.3d 536, 538 (6th Cir. 1998) (quoting 39 U.S.C. § 201). Among the "general powers" bestowed on the USPS by Congress in that Act is the authority "to sue and be sued in its official name." 39 U.S.C. § 401(1). That language, the court held, amounts to a waiver of sovereign immunity for claims based on federal law. *Fed. Exp. Corp.*, 151 F.3d at 544 (citing *F.D.I.C. v. Meyer,* 510 U.S. 471, 480-83 (1994)). (Claims against the government or its agents based on state tort law are governed by the Federal Torts Claims Act, 28 U.S.C. § 2671, *et seq.*, *id.* at 542).

The federal defendants do not push back on that argument, at least not directly. Sovereign immunity is a jurisdictional doctrine; a federal court does not have the power to adjudicate a claim against the federal government absent a waiver. *Ford Motor Co. v. United States*, 768 F.3d 580, 586 (6th Cir. 2014) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The federal defendants acknowledged as much by moving to dismiss under Federal Rule of Civil Procedure 12(b)(1) (authorizing dismissal "for lack of subject matter jurisdiction"). In their reply brief, though, the federal defendants do not press the jurisdictional argument; instead, they contend that Parker cannot bring a constitutional claim against the USPS for reasons unrelated to the Court's authority to adjudicate. That question is discussed next.

B.

The federal defendants also invoke Rule 12(b)(6). To survive a motion to dismiss under that rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a

plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). When reviewing the motion, the Court "must 'construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true.'" *Id.* at 951 (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)).

Parker labels her claim as a "violation of due process," but beyond that, her legal theory is cloudy. She describes it as "novel." The Due Process Clauses found in the Fifth and Fourteenth Amendments have both a procedural and a substantive component. *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018). Both act as a check on the power of the government vis-à-vis its citizens. A procedural due process claim usually involves the deprivation of a liberty or property interest by the government without appropriate procedural protections, most commonly fair notice and a fair opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

Nowhere in Count II of the amended complaint does Parker intimate that the federal defendants denied her any procedural protections on the way to taking adverse action against her liberty or property interests. The thrust of her grievance is the USPS's *inaction* in the face of the union's vile excoriations aimed at her and other managers of color, and then allowing the union to interfere with her employment duties and promotion opportunities. Parker's due process claim, therefore, decidedly falls into the substantive category and will be analyzed as such.

"Substantive due process is '[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'"

*Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). It prohibits the government from infringing on "fundamental rights" without sufficient justification. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

"To state a cognizable substantive due process claim, the plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ). "What seems to be required is an intentional infliction of injury . . . or some other governmental action that is 'arbitrary in the constitutional sense.'" *Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997) (quoting *Lewellen v. Metro. Gov't of Nashville & Davidson County*, 34 F.3d 345, 351 (6th Cir. 1994)).

In Count II, Parker alleges that the federal defendants were "on notice" of the union's abusive behavior — which included bullying through racially-charged insults — and "fostered" that behavior by failing to "firmly oppose it." And then, she says, the federal defendants allowed the union to play a role in the USPS's employment decisions regarding the plaintiff. Adding insult to injury, Parker says that her supervisors told her that when dealing with the union, she had to "suck it up" and suffer the indignities. Those allegations paint a horrible picture of a hostile workplace environment that should not have to be tolerated by any employee. But for several reasons, they do not state a cognizable claim under the Due Process Clause.

To begin, Congress enacted the Civil Service Reform Act (CSRA), 5 U.S.C. §§ 1101, *et seq.*, as the main body of law that governs the relationship between federal employees and the agencies that employ them. Against the backdrop of "the comprehensive nature of the remedies currently available" through that legislation, the Supreme Court has declined to recognize new constitutional causes of action for federal employees contesting personnel actions by federal

agencies, absent further direction from Congress. *Bush v. Lucas*, 462 U.S. 367, 388, 390 (1983) (the Court "decline[d] 'to create a new substantive legal liability without legislative aid and as at the common law,' because [it was] convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it") (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 302 (1947)).

Parker says that the CSRA is no help to her because she is not aggrieved by a "personnel action," which is the exclusive purview of that law. She says that the gravamen of her complaint with the USPS is its failure to abide by its policy statements and joint agreement with the union to condemn and eliminate workplace bullying. And she points to the concurring opinion in *Bush*, in which two justices might have recognized a cause of action under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), had "Congress . . . not created a comprehensive scheme that was specifically designed to provide full compensation to civil service employees who are discharged or disciplined in violation of their" constitutional rights. *Bush*, 462 U.S. at 390 (Marshall, J., concurring). She cites *Beatty v. Thomas*, No. 05CV71, 2005 WL 1667745 (E.D. Va. June 13, 2005), as an example of an instance where a federal employee was allowed to bring a constitutional claim against a federal employer even where the CSRA applied.

But that is not what Parker stated in the amended complaint. She alleges that after listening to the union, "[t]he USPS narrowed the scope of [her] responsibilities and by-passed her for promotion." The CSRA defines "personnel action" to include promotions and any decisions concerning pay, benefits, or awards, among others. 5 U.S.C. § 2302(2)(A). And the Act prohibits agency supervisors from "consider[ing] any recommendation or statement, oral or written, with respect to any individual who . . . is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records of the person

-8-

furnishing it and consists of . . . an evaluation of the work performance, ability, aptitude, or general qualifications of such individual; or . . . an evaluation of the character, loyalty, or suitability of such individual." 5 U.S.C. § 2302(b)(2). Parker's complaint falls squarely within the purview of the CSRA, which provides a remedy for her claim that the USPS allowed itself to be unduly influenced by the union's vexatious importunities.

The *Bush* concurrence provides Parker no help, because she cannot bring a free-standing constitutional claim against her federal agency employer. In 42 U.S.C. § 1983, Congress provided a specific damages remedy for plaintiffs whose constitutional rights were violated by state officials, but Congress provided no corresponding remedy for constitutional violations committed by agents of the federal government. *Ziglar v. Abbasi*, --- U.S. ---, 137 S. Ct. 1843, 1854 (2017). The Supreme Court filled that vacuum in *Bivens* by implying a cause of action in certain instances so that "victims of a constitutional violation committed by a federal agent may recover damages against a federal official despite the absence of a statute conferring the right to recover damages." *Jones v. Tennessee Valley Auth.*, 948 F.2d 258, 262 (6th Cir. 1991). However, a claim under *Bivens* can be raised only against federal agents acting under the color of federal law, not the agencies themselves. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself.").

Moreover, "[a] *Bivens* remedy is available only if (1) there are no 'alternative, existing process[es]' for protecting a constitutional interest and, (2) even in the absence of an alternative, there are no 'special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Haines v. Federal Motor Carrier Safety Admin.*, 814 F.3d 417 (6th Cir. 2016) (quoting *Left Fork Min. Co., Inc. v. Hooker*, 775 F.3d 768 (6th Cir. 2014)). Parker's argument fails both of these tests. There are alternative processes available — the CSRA, Title VII — and courts are

hesitant to expand the concept of substantive due process beyond that "narrow class of interests . . . so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003)).

*Beatty v. Thomas* does not hold otherwise. In that case, the court held merely that a federal agency's post-termination conduct, which consisted of disparaging its former employee so as to interfere with his future employment prospects, could be redressed by a suit for denial of procedural due process where the plaintiff was denied an opportunity to refute the charges. 2005 WL 1667745, at *10. The claim based on the agency's action *after* it terminated the employee was not preempted by the CRSA or Title VII. *Id.* at *7-8. Parker's claim here is based on the USPS's actions and inactions while she is still employed by that agency.

Parker says that she is not asking the Court to imply a cause of action. However, the Fifth Amendment's Due Process Clause is not self-executing; federal courts "have been hesitant to find causes of action arising directly from the Constitution." *Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980). Instead, for a plaintiff to recover damages, courts *must* imply a cause of action, something the Supreme Court has done on only three occasions. *Ziglar*, 137 S. Ct. at 1854-55 (referencing *Bivens*, *Davis v. Passman*, 442 U.S. 228 (1979) (implied cause of action for sex discrimination under the Fifth Amendment), and *Carlson v. Green,* 446 U.S. 14 (1980) (implied cause of action for denial of to a prisoner of adequate medical treatment under the Eighth Amendment)). Without an implied cause of action, the plaintiff is adrift at sea.

Title VII also plays a role here. It "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Servs. Admin.*, 425 U.S. 820, 825 (1976). Parker says she can obtain no relief under Title VII because she is not complaining about

discrimination. Instead, she says that her main grievance is focused on the USPS's tolerance of workplace bullying irrespective of race. But she alleges in her amended complaint that the bullying consisted almost exclusively of slurs, insults, and verbal attacks that were infused with racial invective. To be sure, she is not accusing any USPS employee of authoring those vituperations. But Title VII protects employees from hostile work environments created by harassing third parties where the employer knew about the harassment and failed to take prompt action. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986) (Title VII affords employees "the right to work in an environment free form discriminatory intimidation, ridicule, and insult"); *Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005) ("An employer may be held liable for the actionable third-party harassment of its employees where it ratifies or condones the conduct by failing to investigate and remedy it after learning of it."); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014) (an "employer is liable under Title VII for third parties creating a hostile work environment if the employer knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment"); *Crist v. Focus Homes, Inc*., 122 F.3d 1107, 1111–12 (8th Cir. 1997) (finding that a home for developmentally-disabled patients could be liable for a hostile work environment created by a third party resident against an employee because the home "clearly controlled the environment in which [the third party resident] resided, and it had the ability to alter those conditions to a substantial degree").

Parker asks this Court to recognize a new constitutional right to workplace conditions that are free of bullying and insulting behavior. That no other court has recognized such a claim is understandable, since there are other ways a federal employee can obtain the same relief Parker seeks here, if proper channels are pursued. Count II of the amended complaint in this case, though,

-11-

based solely on the Fifth Amendment's Due Process Clause, fails to state a claim for which relief can be granted.

### III.

The NALC contends that Parker's federal constitutional claim for a violation of her rights under the Fifth Amendment's Due Process Clause cannot be sustained because it is not a state actor. The Court agrees.

The Constitution protects citizens from infringement of their rights by the government, not by private parties. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978) (recognizing that "most rights secured by the Constitution are protected only against infringement by governments") (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974); *Civil Rights Cases*, 109 U.S. 3, 17-18 (1883)). There are times, however, when a private party may be deemed a state actor. And although the Supreme Court has acknowledged that its "cases deciding when private action might be deemed that of the state have not been a model of consistency," *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 632 (1991) (O'Connor, J., dissenting), those instances tend to fall into two broad categories: the "public function exception," and the "entanglement exception." *See* Chemerinsky, *Constitutional Law* at 552 (3d ed. 2009). These categories include the traditional exceptions that courts have denominated as the public function test, the state compulsion test, and the nexus test. *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992).

Under the public function exception, a private actor can be held accountable for a constitutional violation when it exercises "powers traditionally exclusively reserved to the State." *Jackson*, 419 U.S. at 352. The Sixth Circuit has interpreted the public function category narrowly, noting that only functions like holding elections, exercising eminent domain, and operating a

-12-

company-owned town meet this test. *Chapman v. Higbee Co.*, 319 F.3d 825, 833–34 (6th Cir. 2003) (en banc). That category plays no role here.

Under the entanglement exception, a private entity may be found to be a state actor if the state has affirmatively authorized, encouraged, or facilitated the private unconstitutional conduct, or otherwise permitted a private actor to "exercise[] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (finding private physician under contract with state to provide medical services to prison inmates was a state actor) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Within this exception, state action by private parties has been found when the executive or judicial arm of state government has provided assistance in perpetrating unconstitutional conduct. *See*, *e.g.*, *Shelley v. Kraemer*, 334 U.S. 1 (1948) (state action found where private party resorted to state courts to enforce discriminatory private deed restrictions); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) (finding state action based on the symbiotic relationship between restaurant and publicly-run parking facility leasing property to the restaurant); *North Ga. Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601 (1975) (using state courts and bailiffs to enforce creditor's remedies without adequate procedural protections).

A private entity that conspires with the government also can be liable for a violation of constitutional rights. *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004); *see also Cooper v. Parrish*, 203 F.3d 937, 952 n. 2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983.").

Parker does not allege a conspiracy, nor does she attempt to invoke either of the exceptions noted above. Instead, she insists that the NALC, as a "public-sector union recognized under the complex statutory scheme established by Congress" and as the sole representative of USPS employees under 39 U.S.C. § 1203(a), "stands alone as a governmental actor subject to adhering to the [United States] Constitution no differently than the federal government." That position, however, collides with the well-established general rule that a labor union, like the NALC, is generally considered a private party, not a government actor. *See Moore v. Int'l Bhd. of Elec. Workers Local 8*, 76 F. App'x 82, 83 (6th Cir. 2003) (affirming district court's dismissal of section 1983 claim against union because the union was not a state actor); *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("Labor unions . . . generally are not state actors"); *Messman v. Helmke*, 133 F.3d 1042, 1044 (7th Cir. 1998) ("In general, a union is not a state actor"). Parker contends that her position is supported by a "myriad number of cases that hold public unions accountable under the First Amendment." However, the footnote she placed within that sentence is empty. It simply reads, "[s]tring citations omitted."

The one case she does rely on by name, *Janus. v. AFSCME, Council 31*, ---U.S.---, 138 S. Ct. 2448 (2018), does not help her. In that case, the Supreme Court held that an Illinois statute that required public employees who were not union members to pay union fees violated the First Amendment. 138 S. Ct. at 2460-61. The distinction between that case and this one is apparent: in *Janus*, the state actor was the state itself, not the union. *See id.* at 2479 (holding that a "First Amendment question arises when a State *requires* its employees to pay agency fees"). In this case, Parker focuses on the conduct of a private party: the union. In other cases involving First Amendment challenges to compelled union fees, the Supreme Court found that the applicable legislation provided the basis for government action even when the employer is a private party.

*See*, *e.g.*, *Ry. Employees' Dep't v. Hanson*, 351 U.S. 225 (1956) (applying First Amendment analysis to case involving private railroad and railroad union because "[t]he enactment of the federal statute authorizing union shop agreements is the governmental action on which the Constitution operates.").

The NALC is a private entity, not a government actor. Several courts that addressed similar claims likewise have concluded that the NALC does not constitute a governmental entity. *See McKow v. Potter*, No. 01-1984, 2002 WL 31028691, at *12 (S.D.N.Y. 2002) (plaintiff "alleged no facts that could lead to a conclusion that the NALC could be considered a state actor, [so] he cannot assert any constitutional claims against the union"); *Weber v. Potter*, 338 F. Supp. 2d 600, 608 (E.D. Pa. 2004) ("NALC is a private non-governmental entity."). Because the NALC is a private entity, "inferring a constitutional tort remedy against a [it] is therefore foreclosed." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001).

IV.

According to the pleaded facts in the amended complaint, the conduct of the NALC's representatives was deplorable, and the USPS's inaction is inexcusable. Remedies exist for Parker to seek redress for any loss of promotion opportunities and curtailment of job responsibilities, both against the union for its interference with the relationship with her employer, and against the USPS for suffering those conditions of her employment. Those remedies, however, are not found in the Fifth Amendment, which is the sole basis upon which her amended complaint is predicated.

Accordingly, it is **ORDERED** that the defendants' motions to dismiss (ECF Nos. 16, 22) are **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: June 12, 2020